THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* TONY SANFORD *et al.*, Defendants-Appellants.

(No. 60596;

First District (4th Division)—November 26, 1975.

Paul Bradley, of State Appellate Defender's Office, of Chicago, for appellants.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, John T. Theis, and Robert Handelsman, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

After a bench trial, Henry Brisbon and Tony Sanford were found guilty of rape (Ill. Rev. Stat. 1971, ch. 38, § 11—1) and sentenced to a term of 6 to 18 years in the penitentiary. They appealed, contending that the evidence was insufficient to prove their guilt beyond a reasonable doubt in light of the "doubtful" identification testimony of the complaining witness and the strong alibi evidence of the defendants.

The complaining witness, a student nurse at the time of the occurrence, testified that on February 4, 1972, at approximately 11:15 p.m., she was in a parking lot scraping ice from her windshield, preparatory to going to work. A car pulled up beside her and a young man who emerged holding a gun ordered her to enter her car. He then asked how much money she had and, in response, she gave him her wallet. He stated that it was not enough; that he wanted more than that. The young man then ordered her to enter the car in which he had been riding, threatening to blow her head off if she did not obey. This individual was identified by the witness as defendant Brisbon.

The complaining witness testified that she entered a dark green car and sat in the rear seat. The young man sat behind the wheel and handed the gun to a second individual, identified by the witness as defendant Sanford, who sat in the back with her. They drove for approximately 15 minutes, then stopped at a secluded area behind some townhouses. The driver asked the witness for her watch and she relinquished it. When told to remove her clothes, she hesitated until the other young man threatened to blow off her head. Both individuals engaged in sexual intercourse with her. She was then driven back to her car. After exiting their automobile, she observed the license number AA 3189. She then drove to her place of employment and notified the police of the incident.

The arresting officer testified to the events which occurred on February 7, 1972, the date of the arrest of both defendants. Officer Soltysiak stated that at about 1 a.m., he observed a small green car with Illinois license number AA 3189 make an improper turn. After his partner checked the hotsheet, they pursued the vehicle in an attempt to curb

it, whereupon a chase ensued. When the automobile stopped, one of the occupants, identified by the officer as defendant Sanford, exited from the rear seat. The officers apprehended him approximately 15 feet from the car. All four occupants, including defendant Brisbon, were then placed under arrest.

The parties stipulated that a microanalyst employed by the police department would testify, if called, that a medical examination of the complaining witness made at the hospital revealed the presence of human spermatozoa and that a pair of jockey-type shorts worn by the defendant Sanford showed evidence of human sperm.

Both defendants took the stand on their own behalf. Defendant Sanford testified that on February 4, 1972, he was at his uncle's house from 10 a.m. until midnight, and that he did not leave except to run an errand for his uncle's friend. Sylvia Johnson substantially corroborated this, testifying that she was in the house from approximately 1 in the afternoon until the next morning and that Sanford was present except for a short period when he went to a store for her. Moses Sanford, defendant's uncle, also testified that Sanford was in the house during the entire evening hours.

According to Sanford's account, at the time of his arrest, on February 7, he and three friends were returning from a party in a Ford Falcon driven by Eddie Wade. He had not previously been a passenger in the car. The occupants saw the flashing lights of the police but Wade continued until they "hit something." Sanford testified that defendant Brisbon was not in the car and that he had not seen him for a week until he was put in the paddy wagon. He explained the presence of sperm on his shorts as resulting from intercourse with another party.

Defendant Brisbon denied having been in a Ford Falcon on February 4, 1972, and denied having raped the complaining witness. He stated that on the night of the occurrence he was working with his father. Mr. Henry Brisbon, Sr., corroborated the alibi, testifying that he was self-employed in the trucking business and that his son worked for him. From about 1 p.m. on February 4 until the following morning, he and his son worked continuously delivering newspapers as they came off the press to the airport. He stated that such deliveries were made once a week and his son customarily worked 19 to 20 hours straight with him.

Defendant Brisbon also testified that he was arrested in the early morning of February 7 on the stairs of his home for a curfew violation and was driven by car to a police wagon. He was then put into the wagon with three other persons, one of whom was Sanford. Brisbon denied having been a passenger in the Ford Falcon and having been arrested with Sanford. Denise Brisbon, his cousin, testified that she and

the defendant went to a party on February 6 at about 9 or 10 p.m. They left at about 12:30 a.m. and went to a bus stop for transportation home. She stated that she boarded a bus shortly thereafter, leaving the defendant standing on the corner.

Since the evidence in this case was in conflict, the resolution depended upon a determination of the credibility of the opposing witness. It is true that the only evidence linking the defendants to the crime was the identification testimony of the complaining witness. However, the testimony of one witness alone, if positive and credible, is sufficient to convict even though the testimony is contradicted by the accused. (*People v. Stringer* (1972), 52 Ill.2d 564, 569, 289 N.E.2d 631; *People v. Miller* (1964), 30 Ill.2d 110, 113, 195 N.E.2d 694.) The complaining witness notified the police after the incident, giving them a description of the assailants and the license number of their car. She was able to pick both defendants out of a lineup at the police station and identify them in court. Her testimony, in our view, was both credible and positive.

■■ Defendants contend that the identification testimony was weak because the witness was with the accused for only 1 hour late at night, first in an unlit parking lot and then inside a dark car driven to a secluded area. We believe that 1 hour provided ample opportunity to observe the defendants. Although the lighting was not the best, the witness testified that her face was uncovered at all times. She conversed face-to-face with the first young man in both the parking lot and inside her car, and with the second individual in the rear seat of their car while being driven to the area. The witness was necessarily inches away from the assailants when they committed the rape. Rather than a mere fleeting glimpse, "an adequate opportunity for a definite identification" existed. *People v. Marshall* (1966), 74 Ill.App.2d 472, 476, 221 N.E.2d 128.

Defendants also urge that the conviction rested upon doubtful and vague identification, emphasizing certain discrepancies between the actual appearances of the accused and the descriptions provided by the witness. The individual who first accosted the complainant was reported to be about 5 feet 6 inches tall and between 18 and 20 years old, the other slightly shorter and younger. Brisbon and Sanford are 5 feet 7 inches and 5 feet 5 inches, respectively, and both are 16 years of age. While neither was described as having any unusual facial characteristics, and the witness stated that all their teeth appeared to be intact, Brisbon's front tooth had been missing for several years. Nevertheless, the fact that a witness does not describe the specific physical features of the assailant does not destroy the credibility of the identification. (*People v. McCall* (1963), 29 Ill.2d 292, 295, 194 N.E.2d 222.) Precise accuracy

in describing facial characteristics is not required where an identification is positive. *People v. Miller* (1964), 30 Ill.2d 110, 113, 195 N.E.2d 694.

Defendants contend that their alibi testimony should be afforded great weight in light of the "varying description" given by the witness, citing as support *People v. Gardner* (1966), 35 Ill.2d 564, 221 N.E.2d 232, and *People v. Martin* (1968), 95 Ill.App.2d 457, 238 N.E.2d 205. However, both cases are distinguishable on their facts. In *Gardner,* the defendant's rape conviction was overturned because the description of the assailant given to the police by the complaining witness differed in significant respects from the witness' testimony at trial. The defendant's alibi was strongly corroborated by a disinterested and unimpeached witness. The complaining witness in *Martin* identified as one of several robbers, a man who was 8 to 9 inches taller than his original description and, although reported to be clean-shaven, was wearing a moustache. He also failed to notify the police of the defendants' identities until 1 month after the crime, although he testified that he had seen two of them individually during the month. While the defendants' alibis were verified only by members of their respective families, the court found that the totality of the factors involved was sufficient to discredit the identification.

■■ In the instant case, the witness did not change her testimony in any significant respect from the description reported to the police. A failure to describe a particular facial feature does not create, without more, a reasonable doubt as to guilt. We do not believe, therefore, that the witness' omission to note the absence of Brisbon's front tooth destroyed the credibility of her identification. In any event, where there are inconsistencies or conflicts in the testimony of a witness, the trier of fact will determine whether or not the testimony is reliable. *People v. v. Brown* (1972), 52 Ill.2d 94, 105, 285 N.E.2d 1.

■■ Defendants stress that their alibis were corroborated by unimpeached witnesses. It is, of course, a function of the trier of fact to make a determination of the credibility of alibi witnesses. A reviewing court will not substitute its judgment where the evidence presented is sufficient to convict. While the defendants' witnesses testified that they were elsewhere, the complaining witness identified the accused as the perpetrators of the crime. The basic conflict in the evidence was between the strength of the identification testimony and the strength of the alibis. While the alibis could not be said to tax credulity, the judge resolved the conflict against defendants. We will not overturn the decision simply because defendants presented evidence to the contrary. *People v. Brown* (1972), 52 Ill.2d 94, 106, 285 N.E.2d 1.

490

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

DIERINGER, P. J., and BURMAN, J., concur.