THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* HAROLD LESTER, Defendant-Appellant.

First District (3rd Division)    No. 80-37

Opinion filed December 23, 1981.

James J. Doherty, Public Defender, of Chicago (Thomas E. Verdun and Suzanne M. Xinos, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Iris E. Sholder, and Deborah M. Dooling, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE RIZZI delivered the opinion of the court:

Following a bench trial, defendant, Harold Lester, was found guilty of voluntary manslaughter and sentenced to 36 months' probation. On appeal defendant argues that (1) the court erred in failing to suppress statements made by defendant, (2) his claim of self-defense was not disproved beyond a reasonable doubt, (3) error occurred when the State introduced evidence of the victim's reputation as a quiet and peaceful man in its case-in-chief, and (4) error occurred when the State introduced evidence impeaching defendant's good character before defendant put on evidence of his good character. We affirm.

On the night of May 27, 1978, defendant and the victim, Fondora Garcia, were "bumming money" and using it to purchase wine, which they drank. At approximately 1:30 a.m. on May 28, they purchased a bottle of wine at a liquor store at 4017 N. Sheridan in Chicago. At approximately 2 a.m., a police officer observed the victim leaning against a building in the vicinity of 4019 N. Sheridan. The victim was pouring wine in a cup. The officer had seen the victim under the influence of alcohol hundreds of times before, and he stopped his car and approached the victim. The victim seemed happy, semi-conscious and highly intoxicated. In response to the officer's inquiry, the victim said he did not want to go to jail. The officer frisked the victim and did not find any weapons. He then poured the wine on the sidewalk and told the victim to go home. The officer noted that defendant was sitting in a wheelchair to the right of the victim, and that both of defendant's legs had been amputated. The officer did not search defendant and could not say whether defendant was under the influence of alcohol at that time.

Around 2:30 a.m., two other police officers observed the victim lying against a building at approximately 4019 N. Sheridan. When they attempted to awaken the victim, the victim's coat fell open and one of the

officers saw what appeared to be blood. As the officers attempted to revive the victim, he stopped breathing. No weapon was found in the vicinity of the victim. The two officers who found the victim arrested defendant between 5-5:30 a.m. following a call from the dispatcher that someone was being held for the police at the gas station at Sheridan and Irving Park Roads. Defendant was discovered behind the gas station.

According to statements given by defendant at the police station, after the police poured out the wine that he and the victim were drinking, the victim became angry with defendant for drinking too much wine. The victim pulled a knife from his pocket and came at defendant. Defendant gave conflicting statements as to what happened next. At first he said that he grabbed the victim's wrist, bent the knife back towards the victim's chest and struck him twice. Later, he said that he removed the knife from the victim's hand and then stabbed him twice. He fled to a nearby gas station because he became frightened. He threw the knife down an alley near the gas station and then fell asleep. He was subsequently awakened by a woman and three men. The woman screamed, "You killed Junior," and the men held him at the gas station while the woman called the police.

At approximately 6:35 p.m. on May 28, a court reporter took defendant's statement. The assistant State's Attorney declined to place charges against defendant at that time. However, defendant was re-arrested on May 31.

We first address defendant's argument that the statements he made following his arrest on May 28 should have been suppressed because they were obtained by coercion. At the hearing on the motion to suppress, defendant testified that he was suffering the effects of a two-week drinking binge and was vomiting and having diarrhea attacks. An investigator told defendant that if he would make a statement that he stabbed the victim in self-defense while they struggled over the knife, he would be released. The investigator also informed defendant that a prostitute had witnessed the stabbing and that he had other witnesses as well. In a later conversation between defendant and the investigator, which took place after another officer had asked defendant about the lack of blood on his clothes, the investigator told defendant to say that he took off his bloodied T-shirt and threw it in a garbage can. He further told defendant to say that he had thrown the knife down the alley. According to defendant, no one else was present when these conversations took place.

Defendant also testified that he was questioned by two assistant State's Attorneys at 1:30 p.m. and 4:45 p.m. He gave them a statement at 6:30 p.m., which was recorded by a court reporter. Defendant initialed each page of the statement and signed it. He was then released. During the more than 13 hours that he was in custody, he was not given any food.

The investigator who allegedly told defendant to plead self-defense also testified at the hearing on the motion to suppress. According to his testimony, he gave defendant *Miranda* warnings before each interview he had with defendant. At no time did defendant request an attorney. At the 9 a.m. interview, which lasted approximately 20 minutes, defendant denied committing the stabbing. At 11 a.m., the investigator again interviewed defendant, and defendant gave a statement about his involvement in the victim's death.

According to the investigator, defendant did not appear intoxicated or hungover, nor did he say he was not feeling well. He asked to go to the washroom, but did not vomit. Further, defendant was given water and cigarettes when they were requested. Sandwiches were placed on the table next to defendant, who was not handcuffed, but they apparently went untouched.

The two assistant State's Attorneys who interviewed defendant at approximately 1:30 p.m., 4:30 p.m. and 6:30 p.m. testified that defendant was given *Miranda* warnings at each interview and that defendant understood them. At the 4:30 p.m. interview, one of the assistant State's Attorneys asked defendant how he had been treated by officers at the police station, and he responded that he had been treated "okay." Charges against defendant were not filed on May 28 because in the third interview with defendant the blood-stained T-shirt was first mentioned, and a different version of the specific disposition of the weapon was given.

■■ The test for the admission of a confession is whether it was made freely, voluntarily and without compulsion or inducement of any sort, or whether the defendant's will was overcome at the time he confessed. In determining whether a statement was voluntarily given, the totality of the circumstances must be considered. (*People v. Boyd* (1980), 88 Ill. App. 3d 825, 848, 410 N.E.2d 931, 948.) Factors to be considered include the giving of *Miranda* warnings, the time elapsed between the arrest and the confession, the presence of any intervening circumstances, and the flagrancy and purpose of the official misconduct. (*People v. Lucas* (1980), 88 Ill. App. 3d 942, 949, 410 N.E.2d 1040, 1045.) The State has the burden of proving that a confession was voluntarily given. Ill. Rev. Stat. 1979, ch. 38, par. 114—11(d).

In the present case, defendant did not present any evidence contradicting the testimony of the State's witnesses that he was given *Miranda* warnings each time he was questioned or showing that he lacked the capacity to appreciate those warnings. Defendant was in custody for slightly more than 13 hours, and he was questioned only intermittently and generally for short periods of time. He was not handcuffed. The police investigator denied making the statements attributed to him by defendant. His testimony also contradicted that given by defendant in

regard to defendant's physical well-being while he was at the police station.

■■ The trial court, in denying defendant's motion to suppress statements, stated that the question involved was essentially one of credibility. The court stated that after observing defendant and the investigator testify, it believed that defendant did not testify truthfully and that the investigator testified truthfully in all material respects. Under the circumstances of this case, we believe that the credibility of these witnesses and the weight to be given their testimony was properly determined by the trial court. (*People v. Zamp* (1980), 84 Ill. App. 3d 688, 694, 406 N.E.2d 96, 101.) We believe that the State proved by a preponderance of the evidence (see *People v. Avery* (1980), 88 Ill. App. 3d 771, 775, 410 N.E.2d 1093, 1097) that defendant's statements were the product of his free and rational choice (see *Greenwald v. Wisconsin* (1968), 390 U.S. 519, 521, 20 L. Ed. 2d 77, 79, 88 S. Ct. 1152, 1153).

Defendant next argues that his conviction should be reversed because the State did not disprove beyond a reasonable doubt his claim of self-defense. Defendant did not testify at trial nor did he present any evidence. On appeal defendant points to statements made by him on May 28 following his arrest which were introduced into evidence by the State. According to these statements, the victim became angry with defendant and accused him of drinking too much wine. The victim pulled a knife from his sport coat and advanced on defendant. Defendant grabbed the victim by the wrist with one hand and took the knife from the victim with his other hand. He then stabbed the victim twice.

■■ Self-defense is an affirmative defense, and once it has been raised, the State has the burden of disproving it beyond a reasonable doubt. (*People v. Ortiz* (1978), 65 Ill. App. 3d 525, 530, 382 N.E.2d 303, 306.) Where a defendant's out of court statement is the only direct evidence of what occurred at the time of the killing, the trier of fact is not required to believe the defendant's version of what transpired even if it is the only account given. (*People v. Liddell* (1975), 32 Ill. App. 3d 828, 830, 336 N.E.2d 815, 817.) In weighing the defendant's version of an incident, the trier of fact should consider the probability or improbability of the defendant's account, the circumstances surrounding the killing and the relevant testimony of other witnesses. (*People v. Walden* (1976), 43 Ill. App. 3d 744, 749, 357 N.E.2d 232, 236; *People v. Towers* (1974), 17 Ill. App. 3d 467, 474, 308 N.E.2d 223, 227-28.) There need not be actual rebuttal of the defendant's statements, but only a sufficient showing of circumstances from which defendant's guilt might be concluded by probable deduction. *Liddell*, 32 Ill. App. 3d 828, 830, 336 N.E.2d 815, 817.

■■ Here, the testimony presented by the State's witnesses shows that at

approximately 2 a.m. on May 28, the victim was searched by the police. The victim's sport coat was included in the search, and no weapon was found. Although it is not necessary for the victim to have actually possessed or used a deadly weapon to justify a killing in self-defense (*People v. Brumbeloe* (1968), 97 Ill. App. 2d 370, 377, 240 N.E.2d 150, 154), the absence of a weapon is a factor which may be considered by the trier of fact.

In addition, the State's witnesses testified that defendant gave conflicting accounts of the victim's death. Defendant at first denied killing the victim. He then said that when the victim advanced upon him with his knife drawn he grabbed the victim by the wrist, turned the victim's hand back toward the victim's chest and stabbed him twice. When one of the assistant State's Attorneys told defendant that his description of the event did not make sense, defendant then said that he took the knife from the victim and then stabbed him. The court could have considered these conflicting versions in determining the probability of defendant's claim of self-defense.

■■ Finally, the victim was found by two police officers at the same location where shortly before another officer had seen defendant and the victim together and had searched the victim. Defendant was no longer there. He was found around 5 a.m. behind a nearby gas station. According to defendant's statements, he fled there after stabbing the victim because he became frightened. The court, however, could have viewed defendant's flight as evidence of his consciousness of guilt which tended to refute defendant's theory of self-defense. See *People v. Price* (1979), 79 Ill. App. 3d 1112, 1118, 398 N.E.2d 1158, 1161; *People v. Seiber* (1979), 76 Ill. App. 3d 9, 13-14, 394 N.E.2d 1044, 1048.

■■ In a bench trial, it is the province of the court to determine the credibility of the witnesses and the weight to be accorded the evidence presented, and the court's determination will not be disturbed upon review unless it is palpably erroneous. (*People v. Walden* (1976), 43 Ill. App. 3d 744, 749, 357 N.E.2d 232, 236.) The evidence presented here regarding the circumstances surrounding the victim's death was clearly sufficient to support the trial court's finding that defendant was not acting in self-defense when he stabbed the victim.

Defendant's two remaining arguments concern related issues, and therefore, we address them simultaneously. According to defendant, error occurred when the State was permitted to introduce evidence of the victim's reputation as a quiet and peaceful man before defendant attacked the victim's reputation. Similarly, defendant contends that error also occurred when the State presented evidence impeaching his good character before defendant introduced evidence of his good character.

Defendant's arguments are premised on the principles that (1) the State may not present evidence of the victim's character as a quiet and peaceful man unless the defendant has first offered evidence of the victim's character as a turbulent and quarrelsome man, even where the issue of self-defense has been interposed (*Kelly v. People* (1907), 229 Ill. 81, 89, 82 N.E. 198, 201), and (2) a defendant's character is presumed to be good, and no evidence impeaching his character is admissible until he has introduced evidence of his good character (*People v. Haas* (1920), 293 Ill. 274, 276-77, 127 N.E. 740, 741). Defendant contends that these principles were not followed when the prosecutor, during the State's case-in-chief, was permitted to question two police officers regarding their prior arrests and searches of the victim, and when the prosecutor questioned one of these officers regarding his prior contacts with and searches of defendant. The testimony of the two officers established that they had searched the victim on numerous occasions and never found a weapon. Further, the testimony of one of these officers established that he had previously searched defendant and had seen weapons in defendant's possession.

■■ ■ When the State first began questioning one of the officers regarding his prior arrests of the victim, defendant objected. The court stated, "I will see where he is going, you can make a motion to strike if he doesn't tie it up." Similarly, when the defendant objected to questions asked of the other officer regarding his prior contacts with defendant, the court again overruled the objection subject to a motion to strike "if it was not tied up." Since no motion to strike any of this testimony was ever made, we consider the objections waived. Moreover, in regard to the testimony concerning the prior searches of the victim, the record reveals that defendant elicited this same information on cross-examination of one of the officers. Defendant's own elicitation of this testimony precludes him from asserting on appeal that the testimony should not have been allowed. See *People v. Pickens* (1978), 63 Ill. App. 3d 857, 861, 380 N.E.2d 868, 871; *People v. Jenkins* (1974), 20 Ill. App. 3d 727, 734, 315 N.E.2d 269, 274-75.

■■ ■ Finally, since this case was a bench trial, it is presumed that the trial judge considered only competent evidence in reaching his decision (*Pickens*, 63 Ill. App. 3d 857, 861-62, 380 N.E.2d 868, 871) and that he applied the proper standard in determining defendant's guilt or innocence. (*People v. Cheung* (1980), 83 Ill. App. 3d 1048, 1052-53, 404 N.E.2d 558, 562.) This presumption is overcome only where the record shows that the court relied on improper evidence. (*People v. White* (1980), 84 Ill. App. 3d 1044, 1049, 406 N.E.2d 7, 11.) We do not believe that the record shows that the court improperly relied on the challenged testimony of the officers. Moreover, if the court did improperly rely on this testimony, we would not reverse defendant's conviction, because we conclude that the

outcome of the trial would have been the same. See *Cheung*, 83 Ill. App. 3d 1048, 1051, 404 N.E.2d 558, 561; *People v. Rose* (1979), 77 Ill. App. 3d 330, 337, 395 N.E.2d 1081, 1087.

Accordingly, the judgment is affirmed.

Affirmed.

McGILLICUDDY and WHITE, JJ., concur.