Jeffrey MOLETERNO, Petitioner–
Appellee,

v.

Keith O. NELSON, Respondent–
Appellant.

No. 96–1826.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 20, 1996.

Decided May 19, 1997.

Barry Levenstam, Jerold S. Solovy, Theodore T. Eidukas (argued), Jenner & Block, Chicago, IL, for Petitioner-Appellee.

Michael M. Glick (argued), Office of Attorney General, Chicago, IL, for Respondent-Appellant.

Before POSNER, Chief Judge, and CUDAHY and DIANE P. WOOD, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

It is a rare case in which a district court grants a state prisoner's petition for a writ of habeas corpus under 28 U.S.C. § 2254, and it is equally rare that federal appellate courts find this relief warranted. The Administrative Office of the United States Courts reported, for example, that in the twelve-month period ending September 30, 1995, a total of 1,062 such petitions were filed in federal district courts in the Seventh Circuit. See Judicial Business of the U.S. Courts: Report of the Director 147, 159 (1995); Memorandum from the Analysis & Reports Branch, Statistics Division, Administrative Office of the U.S. Courts (April 23, 1997). Of that number, the district courts disposed of 986 petitions, granting only 14. A grant rate of about 1.5% hardly indicates a federal judiciary that routinely second-guesses the results reached in state courts. Nonetheless, considerations of finality and comity require us to pay careful attention on appeal to all cases in which the writ is issued, just as the need to respect constitutional limitations and fundamental principles of federal law counsels care in evaluating prisoner appeals.

The district court in Jeffrey Moleterno's case found that the petition presented one of those rare occasions on which the writ should issue, finding that he had been denied due process of law through inadequate jury instructions on the State's burden of disproving his affirmative defenses. We conclude, however, that under both the amended version of § 2254(d), which we have found applicable to pending cases in Lindh v. Murphy, 96 F.3d 856 (7th Cir.1996 en banc), cert. granted, —— U.S. ——, 117 S.Ct. 726, 136 L.Ed.2d 643 (1997), and the prior version of § 2254, the district court erred. We therefore reverse the judgment of that court.

I

On February 3, 1987, Moleterno fatally shot Timothy Bolger after an altercation that largely took place while both men were driving their cars. See People v. Moleterno, 199 Ill.App.3d 15, 145 Ill.Dec. 85, 556 N.E.2d 703 ("Moleterno I"), appeal denied, 133 Ill.2d 567, 149 Ill.Dec. 331, 561 N.E.2d 701 (1990). An eyewitness, Russell Marquardt, observed the two cars, noting that they appeared to be jockeying for position and attempting to cut one another off. Ultimately, while both cars were stopped in the middle of the traffic lanes, Moleterno got out of his car and began pointing at Bolger with his left hand while holding a gun behind his back with his right hand. As Moleterno shouted at Bolger, Bolger emerged from his car and took a couple of steps toward him. Moleterno then pivoted, pointed the gun at Bolger's chest, and fired. After that, Moleterno fled, but Marquardt identified him in a police line-up later that evening.

At his trial for murder, which took place in December 1987, Moleterno argued that he acted in self-defense, under what is now 720 Ill.Comp.Stat.Ann. 5/7-1 (West 1997), and he raised two forms of the partial affirmative defense of voluntary manslaughter, see 38 Ill.Rev.Stat. 9-2(a)-(b) (voluntary manslaughter based on passion resulting from provocation or based on unreasonable belief in justified use of force), repealed by P.A. 84-1450, § 2 (effective July 1, 1987) (current version at 720 Ill.Comp.Stat.Ann. 5/9-2 (West 1997)). (The new law replaced voluntary

manslaughter with second degree murder and also shifted the burden of proving its mitigating states of mind to the defendant. See 720 Ill.Comp.Stat.Ann. 5/9–2(c) (West 1997). Although the new law states that it applies to homicides occurring after December 31, 1986, see *People v. Reddick*, 123 Ill.2d 184, 122 Ill.Dec. 1, 6, 526 N.E.2d 141, 146 (1988), and thus to Moleterno's case, neither party has presented an argument based on the retroactive nature of the revision. We therefore analyze the case, as the state courts and the district court did, as if it were clear that the pre-revision statute applies.)

At Moleterno's trial, the court gave the jury Number 7.02 of the Illinois Pattern Jury Instructions, Criminal (2d ed. 1981) ("IPI Criminal") on the State's burden of proof on the murder charge, IPI Criminal No. 7.04 on the offense of voluntary manslaughter based on provocation, and IPI Criminal No. 7.06 on the offense of voluntary manslaughter based on an unreasonable belief in a justified use of force. Reflecting the pre-*Reddick* and pre-statutory revision law, both IPI Criminal Nos. 7.04 and 7.06 instructed the jury that the State had the burden of proof on the offense of voluntary manslaughter. The jury convicted Moleterno of first-degree murder, he was sentenced to 20 years' imprisonment, and on February 16, 1988, he filed a direct appeal in the state court.

On June 20, 1988, the Illinois Supreme Court decided *Reddick*, in which it held that under 38 Ill.Rev.Stat. 3–2(a) and (b) (now found at 720 Ill.Comp.Stat.Ann. 5/3–2(a)–(b) (West 1997)), IPI Criminal Nos. 7.02, 7.04, and 7.06, taken together, misstated the State's burden of proof on the question whether a defendant acted under an intense passion or unreasonable belief of justification, where one or more of those theories were offered as a defense to murder charges. 122 Ill.Dec. at 6, 526 N.E.2d at 146. As reflected in the Illinois Pattern Instructions, the State had the burden of *proving* the existence of intense passion or unreasonable belief in justification. The court held, relying on 38 Ill.Rev.Stat. 3–2(a) (defining "affirmative defense") and 38 Ill.Rev.Stat. 3–2(b) (allocating burden of proof to State on issues raised in affirmative defenses), that where

either intense passion or unreasonable belief in justification was presented as a defense, the State should have had the burden of *disproving* the state of mind in question. Otherwise, the court concluded, under the current pattern instructions a verdict of voluntary manslaughter in a murder prosecution would be impossible: the People would not introduce evidence of unreasonable belief or heat of passion in their case in chief, and thus they would never satisfy the burden of proving either of those elements.

Moleterno filed his opening brief in the Illinois Appellate Court on September 29, 1988. There he argued only that (1) the evidence was insufficient as a matter of law to establish his guilt on the charge of murder, (2) the evidence showed that he was guilty of voluntary manslaughter at most, and (3) the trial court erred "in failing to instruct the jury, *sua sponte*, that the State had the burden of disproving beyond a reasonable doubt his affirmative defenses of self-defense and voluntary manslaughter, based on an unreasonable belief in the need to use deadly force." *Moleterno I*, 145 Ill. Dec. at 90, 556 N.E.2d at 708. On the last point, he did not cite *Reddick*. Instead, he relied solely on 38 Ill.Rev.Stat. secs. 3–2(a), 7–1 (use of force in defense of person), and 7–14 (defining justifiable use of force as affirmative defense), and two pre-*Reddick* Illinois Appellate Court decisions, *People v. Bolden*, 132 Ill.App.3d 1047, 87 Ill.Dec. 852, 477 N.E.2d 1380 (1985) (holding voluntary manslaughter is partial affirmative defense which must be disproved by State), and *People v. Lester*, 102 Ill.App.3d 761, 58 Ill.Dec. 416, 430 N.E.2d 358 (1981) (bench trial), only one of which discussed the issue of jury instructions.

The State filed its opposition brief on October 26, 1989. It cast Moleterno's argument on the jury instructions in terms of *Reddick* and then argued that *Reddick* "had nothing to do with" Moleterno's case. It also argued that (1) Moleterno was estopped from challenging the jury instructions given at trial because they were the ones submitted by his trial counsel, (2) legally, the evidence in Moleterno's case could not support a finding of voluntary manslaughter because Moleterno

had acted as the aggressor, and (3) *Reddick* should not apply retroactively because it was based solely on a construction of Illinois statutes, citing *People v. Erickson,* 117 Ill.2d 271, 111 Ill.Dec. 924, 513 N.E.2d 367 (1987), for the proposition that Illinois courts are under no obligation to apply Illinois Supreme Court decisions retroactively unless they involve federal constitutional rights. Although it acknowledged that the question of *Reddick*'s retroactivity was then pending before the Illinois Supreme Court, in *People v. Peggy Austin,* 133 Ill.2d 118, 139 Ill.Dec. 819, 549 N.E.2d 331 (1989) (subsequently decided in favor of applying *Reddick* retroactively), the State argued that *Reddick* did not implicate the federal constitution, citing *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977) (not unconstitutional for state to place on defendant burden of proving mitigating state of mind). Moleterno responded in reply that he had not waived the issue of incorrect jury instructions since *Reddick* was decided nearly six months after his guilty verdict. In addition, he cited several decisions of the Illinois Appellate Court that had already applied *Reddick* retroactively, including *People v. Brooks,* 175 Ill.App.3d 136, 124 Ill.Dec. 751, 756, 529 N.E.2d 732, 737 (1988), and he quoted *Brooks*' statement that *Reddick* was "incontestably of constitutional dimension."

The Appellate Court found it unnecessary to decide whether the *Reddick* issue was properly before it, or whether the *Reddick* decision should be applied retroactively. It concluded that even if the trial court's instructions were wrong, the error was harmless:

> [t]he trial court's failure to instruct the jury on the State's burdens of disproving self-defense and voluntary manslaughter ... was harmless beyond a reasonable doubt. It was harmless because the evidence of defendant's guilt of the offense of murder, *i.e.,* of his lack of any belief in the need to use deadly force, was so clear and convincing that the trial result would not have been different with different instructions.... Defendant was not prejudiced by the failure to instruct the jury as contended.

*Moleterno I,* 145 Ill.Dec. at 91, 556 N.E.2d at 709 (citations omitted).

After unsuccessfully petitioning the Appellate Court for rehearing, see *People v. Moleterno,* No. 88–546 (Ill.App.Ct. June 28, 1990), and the Illinois Supreme Court, see *People v. Moleterno,* 133 Ill.2d 567, 149 Ill.Dec. 331, 561 N.E.2d 701 (1990) (denying appeal), Moleterno turned to the Illinois Post–Conviction Hearing Act, 725 Ill.Comp.Stat.Ann. 5/122 *et seq.* (West 1997). Again he was unsuccessful. See *People v. Moleterno,* 254 Ill.App.3d 615, 194 Ill.Dec. 13, 627 N.E.2d 129 (1993) ("*Moleterno II*"), appeal denied, 154 Ill.2d 566, 197 Ill.Dec. 492, 631 N.E.2d 714 (1994). This time, Moleterno claimed that his trial counsel had been ineffective for failing to present evidence of Bolger's violent behavior that would have supported his claim of self-defense and for failing to obtain and introduce the murder weapon at trial for impeachment purposes. In the alternative, Moleterno argued that the gun, which was unavailable during the trial, was "newly discovered evidence" that warranted a new trial. (Apparently after the shooting incident Moleterno had given the gun to his wife, who gave it to one Albert Perry. Perry hid the gun in the back of his furnace until 1990, when Moleterno called him from prison and asked him to return the gun to his wife.) Moleterno did not, however, mention the jury instruction error at this stage, although the Illinois postconviction relief provision would have permitted him to raise it and warns that "[a]ny claim of substantial or constitutional rights not raised in the original or an amended petition is waived." See 725 Ill.Comp.Stat. Ann. 5/122–1(a) (West 1997) (permitting claims under the United States and Illinois constitutions); 725 Ill.Comp.Stat.Ann. 5/122–3 (West 1997). Like Moleterno's direct appeal, his post-conviction petition and subsequent appeals were unsuccessful. See *Moleterno II,* 194 Ill.Dec. 13, 627 N.E.2d 129, 197 Ill.Dec. 492, 631 N.E.2d 714 (denying leave to appeal).

Finally, on March 18, 1994 Moleterno turned to the federal court for relief under 28 U.S.C. § 2254. His petition raised five claims: (1) that he was denied due process of law because of inadequate jury instructions

on the State's burden of disproving his affirmative defenses, (2) that the defective instructions did not amount to harmless error, (3) that his trial counsel was ineffective in failing to present evidence on the victim's violent nature, (4) that trial counsel was ineffective in failing to obtain the gun, and (5) that the gun was newly discovered evidence warranting a new trial. The district court found that all five claims were properly before it. Although it saw no merit in the last three arguments, it decided that the jury instructions misplaced the burden of proof on the question of a mitigating mental state and that this error in burden of proof violated Moleterno's right to due process under the United States constitution. Furthermore, the court disagreed with the Illinois Appellate Court's conclusion that any error in the instructions was harmless beyond a reasonable doubt.

The district court began its analysis of the jury instruction point by asserting that the "claim [was] reviewable in this federal habeas corpus proceeding because the Illinois courts would have allowed Moleterno to challenge the instructions at trial under a contemporaneous-objection rule," citing *Falconer v. Lane*, 905 F.2d 1129, 1133 (7th Cir.1990). See *United States ex rel. Moleterno v. Washington*, No. 94 C 1732, 1996 WL 148044 at *4 (N.D.Ill. Mar.25, 1996). This meant, the court thought, that Moleterno was not procedurally defaulted from challenging the instructions in the habeas proceeding due to his failure to make a timely objection. The court therefore saw the question as "whether the erroneous instruction so infected the entire trial that the resulting conviction violate[d] due process." See *id.*, quoting *Falconer*, 905 F.2d at 1135 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973)). Relying on *Reddick*, the district court then concluded that the instruction was incorrect as a matter of Illinois law (without discussing the retroactivity issue that the Illinois court had also elided), *and* that it violated Moleterno's due process rights under *Falconer*. See 1996 WL 148044 at *4. Last, citing *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), the district court concluded that the error had "substantial and injuri-

ous effect or influence in determining the jury's verdict." See *id.* To permit the jury to convict Moleterno of murder even if the State had not negated the possibility of intense passion or unreasonable belief of justification, which would have been possible under the erroneous instructions, could not, in the court's view, be a harmless error. On March 8, 1996, the court granted Moleterno's petition for a writ of habeas corpus, and it later stayed the issuance of the writ pending appeal.

## II

The State presents three arguments here, any of which would, if correct, require reversal of the district court's order. First, the State claims that the court should have found that Moleterno's jury instruction claim was barred by procedural default, which he failed to overcome with an adequate showing of cause and prejudice. Second, it argues that the *Reddick* claim did not rise to the level of a federal constitutional violation. Last, it urges us to find, as the Illinois courts did, that any cognizable error that may have occurred was harmless.

■ It is well established that a prisoner seeking a writ of habeas corpus must exhaust his state remedies. See, *e.g., Rose v. Lundy*, 455 U.S. 509, 522, 102 S.Ct. 1198, 1205, 71 L.Ed.2d 379 (1982); *McGowan v. Miller*, 109 F.3d 1168 (7th Cir.1997); *Clayton–EL v. Fisher*, 96 F.3d 236, 242 (7th Cir.1996); *Cawley v. DeTella*, 71 F.3d 691, 693 (7th Cir. 1995); 28 U.S.C. § 2254(b)(1) (1997). In its brief before the district court, the State stipulated that Moleterno "is without further state court remedies with regard to his claims raised in the instant action, as he has completed his direct appeal and has also completed his appeal from the dismissal of his post-conviction petition." Having avoided the Scylla of exhaustion, however, Moleterno must also steer by the Charybdis of procedural default before his petition can be heard on the merits. It is here (not to belabor the metaphor) that his ship founders. We note additionally that the substantive changes in § 2254(d) made by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L.

No. 104–132, 110 Stat. 1218 (1996) ("AED-PA") made no change in the procedural default rules, see *McGowan,* 109 F.3d at 1175 & n. 2 (applying pre-AEDPA law); *Pitson-barger v. Gramley,* 103 F.3d 1293, 1298 (7th Cir.1996) (applying pre-AEDPA procedural default rules), and thus the other questions relating to the retroactivity of that statute now pending before the Supreme Court do not affect our analysis of the default point.

■ The key question here is whether Moleterno fairly presented his federal contentions to the state court, as he was required to do to preserve his claims under § 2254. See *Duncan v. Henry,* 513 U.S. 364, 365–67, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995) (per curiam); *Anderson v. Harless,* 459 U.S. 4, 6, 103 S.Ct. 276, 277, 74 L.Ed.2d 3 (1982) (per curiam); *Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 2506–07, 53 L.Ed.2d 594 (1971); *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971); *Bocian v. Godinez,* 101 F.3d 465, 468–69 (7th Cir.1996); *Jones v. Washington,* 15 F.3d 671, 674 (7th Cir.1994); *Verdin v. O'Leary,* 972 F.2d 1467, 1473 (7th Cir.1992). In order to avoid forfeiting his claim in the state courts, the defendant must present his argument in the way and at the time state law requires. In the absence of a clear state rule addressing the presentment question, this court has looked to four factors that throw light on whether the state court was fairly alerted to the federal right in question: did the petitioner "(1) rely on pertinent federal cases employing constitutional analysis; (2) rely on state cases applying constitutional analysis to a similar factual situation; (3) assert the claim in terms so particular as to call to mind a specific constitutional right; or (4) allege a pattern of facts that is well within the mainstream of constitutional litigation"? See *Bocian,* 101 F.3d at 469 (quoting *Verdin,* 972 F.2d at 1473–74). If *none* of the four factors is present and the state has not otherwise signalled its satisfaction with the presentment of the federal claim, "then this court will not consider the state courts to have had a fair opportunity to consider the claim." See *Verdin,* 972 F.2d at 1474. On the other hand, "the presence of any one of these factors, particularly (1) and (2), does not automatically avoid a waiver." *Id.*

Moleterno points out that this court concluded in *Falconer* that the same jury instructions that the Illinois Supreme Court had found erroneous as a matter of state law in *Reddick* also violated the due process clause of the Fourteenth Amendment. See 905 F.2d at 1136. This was so because the instructions left open the possibility that the jury might convict a defendant of murder even though it found that the evidence established mitigating circumstances that (under proper instructions) would have required a verdict of voluntary manslaughter, or that the jury might fail to consider whether the evidence established mitigation because it believed it could stop deliberating after it found the elements of murder. See *id.* After the Supreme Court held in *Gilmore v. Taylor,* 508 U.S. 333, 344–45, 113 S.Ct. 2112, 2118–19, 124 L.Ed.2d 306 (1993), that *Falconer* had announced a "new rule" for purposes of *Teague v. Lane,* 489 U.S. 288, 310–12, 109 S.Ct. 1060, 1075–76, 103 L.Ed.2d 334 (1989) (holding new constitutional rules of criminal procedure generally do not apply retroactively unless they (1) place primary, private individual conduct beyond power of legislature to proscribe, or (2) reflect new understanding of "bedrock procedural elements" necessary for fair conviction), this court reaffirmed the validity of *Falconer* in *Thomas v. Peters,* 48 F.3d 1000 (7th Cir.), *cert. denied,* — U.S. ——, 116 S.Ct. 114, 133 L.Ed.2d 66 (1995).

Moleterno's presentment argument rests primarily on language at the end of his opening brief claiming that the "failure to instruct the jury on the proper allocation of the burden" was "an egregious violation of the defendant's constitutional rights to due process and the right to a fair trial" and on the cases cited in his reply brief. Even in his reply brief, however, Moleterno did nothing more than quote the statement in *People v. Brooks,* 175 Ill.App.3d 136, 124 Ill.Dec. 751, 756, 529 N.E.2d 732, 737 (1988) that the *Reddick* decision was "incontestably of constitutional dimension and thus applied retroactively" and refer to several Illinois cases, including *People v. Shields,* 181 Ill.App.3d 260, 129 Ill.Dec. 949, 951–52, 536 N.E.2d 999, 1001–02 (1989) ("adher[ing] to the views expressed in *Brooks* " on retroactive application

of *Reddick* ); *People v. Fercsi,* 182 Ill.App.3d 13, 130 Ill.Dec. 583, 537 N.E.2d 912 (1989) (following *Brooks* ); and *People v. Thomas,* 185 Ill.App.3d 1050, 134 Ill.Dec. 100, 542 N.E.2d 100 (1989) (reversing conviction so jury could reconsider evidence under corrected instructions), writ of habeas corpus granted by *United States ex rel. Vincent Thomas v. Peters,* 1993 WL 141709 (N.D.Ill. Apr.30, 1993) and reversed *sub nom. Thomas v. Peters,* 48 F.3d 1000 (7th Cir.1995) (reversing writ on harmless error grounds). Perhaps recognizing what a thin straw he has, Moleterno now argues that the concluding remarks of his opening appellate brief implied both a general claim that the jury was "confused" (which he argues states a due process claim independent of the one associated with the jury instructions) and a specific claim that the jury instructions themselves were unconstitutional, although he now concedes that this latter argument fails under *Taylor,* 954 F.2d at 449, *rev'd on other grounds,* 508 U.S. 333, 113 S.Ct. 2112, 124 L.Ed.2d 306 (1993). He also claims that the cases he cited in his reply brief should have alerted the court to the federal nature of his claim. Even the Illinois Supreme Court, he notes, believed at the time of his direct appeal proceedings that the jury instruction error discussed in *Reddick* was of constitutional magnitude. Moleterno concludes that the Illinois courts therefore should have recognized automatically that claims predicated on the jury instruction error argument in his direct appeal implicated federal constitutional rights.

■ We cannot agree. Since *Verdin,* we have decided a number of cases on the issue of what constitutes fair presentment of the very jury instruction issue that forms the basis of Moleterno's petition. In *Green v. Peters,* 36 F.3d 602 (7th Cir.1994), we found that just citing *Reddick* was not enough. In *Riggins v. McGinnis,* 50 F.3d 492 (7th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 2621, 132 L.Ed.2d 862 (1995), we held that a petitioner failed to present a constitutional claim in his state court appeal by characterizing a claim in terms of *Reddick* and state law, rather than in terms of *Falconer* and the due process clause. See 50 F.3d at 494. This describes Moleterno's situation to a "T." See also *Green v. Peters,* 36 F.3d at 605–06 & n. 8

(holding that an argument based solely on *Reddick* did not fairly present a federal due process claim). In his opening brief, Moleterno emphasized the issue of who bore the burden of proof, rather than the fundamental defect in the instructions themselves. Moleterno did not provide, or even allude to, any legal theory based on federal rights, federal cases, or federal law, nor did he cite any federal authorities. We have noted more than once that "[i]t is not enough to scatter the words 'due process' in a brief: counsel must sketch an argument about *why* the conviction violates that clause." See *Riggins,* 50 F.3d at 494 (rejecting petitioner's attempt to distinguish *Verdin* by pointing to the words "due process" in his appellate brief). We do not read Moleterno's direct appeal as arguing that the jury was "confused" about anything other than the burdens of proof under state law, and his state postconviction petition was silent about the jury instructions. Like the petitioner in *Riggins,* his direct appeal relied on a few state court citations; the words "due process and fair trial" appeared only in the concluding paragraph. It was not until his reply brief that Moleterno even cited cases that characterized the *Reddick* issue as "constitutional," and then it was only to argue that *Reddick* should have retroactive application. In short, we see no presentment of an error of "constitutional dimension" that suffices under the *Riggins* standard.

■ In order to overcome this procedural default, Moleterno would either have to establish cause and prejudice that would excuse it, or show that he fits within the "miscarriage of justice" exception to the cause and prejudice rule. See *Pitsonbarger,* 103 F.3d at 1298. Moleterno himself offers no reason why he could not have raised the *Falconer* issue at least by the time of his state postconviction proceeding. He therefore does not meet the "cause" element of cause and prejudice. See *Cawley,* 71 F.3d at 696; *Rodriguez v. Peters,* 63 F.3d 546, 554 (7th Cir. 1995). Furthermore, the state court's conclusions that the *Reddick* error was "harmless beyond a reasonable doubt" and that "the trial result would not have been different with such instructions," see *Moleterno I,*

145 Ill.Dec. at 91, 556 N.E.2d at 709, suffices to show that the default did not prejudice him. See *Pitsonbarger*, 103 F.3d at 1300.

■ Finally, the "miscarriage of justice" exception to the cause and prejudice standard is not open to Moleterno. This exception requires a colorable claim of actual innocence as well as an allegation of a constitutional wrong. See *Sawyer v. Whitley*, 505 U.S. 333, 339, 112 S.Ct. 2514, 2518–19, 120 L.Ed.2d 269 (1992) (miscarriage of justice exception applies to "actual" innocence as compared to "legal" innocence); *McCleskey v. Zant*, 499 U.S. 467, 495, 111 S.Ct. 1454, 1470–71, 113 L.Ed.2d 517 (1991); *Montgomery v. Meloy*, 90 F.3d 1200, 1204 (7th Cir.1996); *Steward*, 80 F.3d at 1211–12; *Zavesky v. Miller*, 79 F.3d 554, 556 (7th Cir.1996); *Jones v. Washington*, 15 F.3d 671, 675 (7th Cir.1994). Moleterno makes no argument that he is "actually" (as opposed to "legally") innocent of Bolger's murder, so this exception does not apply.

Without an assertion of cause and prejudice, or a colorable claim that Moleterno is "actually" innocent, the petition should have been denied. This follows, as we noted above, whether we apply the amended version of § 2254 or the version that was in effect at the time Moleterno initially filed his petition in federal court. We therefore have no need to address the State's arguments in the alternative, which challenge the extent to which *Reddick* identifies an error of federal constitutional magnitude and urge the harmlessness of the error.

The judgment of the district court ordering the issuance of a writ of habeas corpus for petitioner Moleterno is REVERSED.