THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JERRY RAMSEY, Defendant-Appellant.

First District (1st Division)   No. 78-1200

Opinion filed September 24, 1979.

James J. Doherty, Public Defender, of Chicago (James L. Rhodes, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Joan S. Cherry, and John R. Roe, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

After a jury trial, Jerry Lee Ramsey (defendant) was convicted of armed robbery and sentenced to 5 to 10 years. Defendant appeals.

At trial, Dennis Howard (complainant) testified that on April 1, 1974, he was employed by a vending machine company. While making rounds to service machines, he entered a company van and was knocked to the floor by two men. One of them was later identified as the defendant. The men began kicking complainant. Complainant testified the van was well lighted and he was able to view the men for several minutes. The men demanded money. Defendant had a gun. Defendant and the other intruder searched the shelves inside the van and went through complainant's pockets. Complainant's wallet, containing $16 and identification, was taken as were his rings.

Defendant demanded the keys to the van's safe. When complainant stated he did not have the keys, defendant placed the gun against complainant's head and threatened to "blow his * * * brains out." Complainant told the men to take whatever they wanted from the van. Defendant found a money bag beneath the shelves in the van. He became very angry and hit complainant over the head with a heavy object. Complainant remained conscious. The two men took cases of cigarettes from the shelves. Defendant again threatened to kill complainant but was prevented from shooting him by the other intruder. The men left the van and told the complainant not to leave for 10 minutes.

After several minutes, complainant left the van. He was met by Willie Celsor, a truck driver. Celsor testified that he observed two black men leaving a van carrying something. The men ran to a car and quickly drove away. Celsor wrote down the license number of the car. Said license was later identified as registered to a motor vehicle owned by defendant.

On April 4, 1974, complainant viewed approximately 200 pictures of black males between the ages of 20 and 30. He picked three photographs as possibly showing the men who robbed him. He identified one of these as depicting the man who had a gun during the robbery. The photograph was of the defendant. Complainant stated he was pretty sure that it was a photograph of the man with the gun. He stated he wished to see the man in person. Complainant did not know at this time whether the police had checked the license number provided by Celsor.

On April 26, 1974, defendant was stopped by Officer Henry F. Gralak while driving his car in Chicago. Officer Gralak testified defendant had a ragged piece of paper taped to the lower right-hand portion of the windshield. He approached defendant and told him he was "being stopped for no city vehicle or proper application displayed in the window." The officer asked to see defendant's driver's license. (Ill. Rev. Stat. 1973, ch. 95½, par. 6—112.) Defendant was unable to produce a driver's license and was taken into custody. While proceeding to the police station, the officer learned defendant's vehicle was involved in an investigation for armed robbery. On April 27, 1974, a police lineup was held. The complainant identified the defendant as being the man with the gun who had robbed him.

Defendant contends his arrest was the result of an illegal stop. He argues that his subsequent arrest and identification are tainted and must not stand. He further contends he was not found guilty beyond a reasonable doubt.

■■ Defendant was stopped for failure to display a Chicago vehicle sticker. This court has found stops for that specific purpose to be permissible. (See *People v. Johnson* (1979), 74 Ill. App. 3d 1037, 393 N.E.2d 40; see also *People v. Morrison* (1978), 57 Ill. App. 3d 468, 471-72, 373 N.E.2d 520, and cases there cited.) When an officer has reason to believe an ordinance has been violated, a resulting stop is based upon "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." (*Terry v. Ohio* (1968), 392 U.S. 1, 21, 20 L. Ed. 2d 889, 906, 88 S. Ct. 1868, 1880.) Furthermore, the officer had a duty to stop defendant pursuant to the Municipal Code of Chicago 1973, ch. 11, sec. 31-32. In instances where "a police officer could justifiably be disciplined for failure to act, his action can hardly be characterized as unreasonable." *People v. Moore* (1966), 35 Ill. 2d 399, 403, 220 N.E.2d 443.

■■ Thus, after making a legal stop, Officer Gralak demanded to see defendant's driver's license pursuant to the above cited statute. Upon defendant's failure to produce a valid driver's license his custodial arrest by the officer was both legal and appropriate. See *Morrison*, 57 Ill. App. 3d 468, 472, and cases there cited.

The subsequent information that defendant's car was involved in an armed robbery investigation was received by the officers as a result of a routine inquiry after defendant's arrest. Defendant's contention that this information was tainted by an illegal stop therefore fails. In our opinion, the evidence establishes that both the stop and the ensuing custodial arrest were legal.

■■ Assuming, *arguendo*, that defendant's stop and subsequent arrest contained elements of illegality, the products of the arrest would still be admissible against defendant in the instant case. As pointed out in *Brown v. Illinois* (1975), 422 U.S. 590, 599, 45 L. Ed. 2d 416, 424, 95 S. Ct. 2254, 2259, quoting from *Wong Sun v. United States* (1963), 371 U.S. 471, 488, 9 L. Ed. 2d 441, 455, 83 S. Ct. 407, 417, all evidence is not necessarily " ' "fruit of the poisonous tree" ' " when its discovery results from illegal police action. Rather, the issue becomes whether the evidence was uncovered through "exploitation of that illegality" or in a manner "sufficiently distinguishable to be purged of the primary taint." *Brown*, 422 U.S. 590, 599, 45 L. Ed. 2d 416, 424, 95 S. Ct. 2254, 2259.

■■ In the instant case, it cannot be said that evidence of defendant's involvement in the armed robbery was uncovered through "exploitation" of an alleged illegal stop. The discovery that defendant's car was involved in a police investigation and the series of events triggered by that information were revealed "by means sufficiently distinguishable" from the initial stop "to be purged of the primary taint." *Brown*, 422 U.S. 590, 599, 45 L. Ed. 2d 416, 424, 95 S. Ct. 2254, 2259.

■■ Defendant also contends he was not proven guilty beyond a reasonable doubt. He alleges his in-court identification was "unduly tainted by the pretrial picture display and lineup." The complainant made a pretrial identification of defendant by photograph and at the lineup and also an identification of defendant at trial. Identification based on pretrial photographic examination will be rejected only if the photographic identification procedure was so " 'impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.' " (*People v. Allender* (1977), 69 Ill. 2d 38, 42, 370 N.E.2d 509.) We find no evidence in the record to indicate that the photographic identification or the lineup were suggestive here. Defendant did not attack the validity of identification by these methods prior to or during trial or in a post-trial motion. The burden of doing so and of proving illegality was upon the defendant. (*People v. Brown* (1972), 52 Ill. 2d 94, 100, 285 N.E.2d 1.) We therefore find complete waiver of these contentions.

■■ In addition, consideration of the merits of these attacks upon the identification in this court leads to a negation of the contentions of defendant in this regard. The United States Supreme Court has stated "reliability is the linchpin in determining the admissibility of

identification testimony * * *." (*Manson v. Brathwaite* (1977), 432 U.S. 98, 114, 53 L. Ed. 2d 140, 154, 97 S. Ct. 2243, 2253.) In our opinion, examination of the five pertinent factors set out in *Manson* demonstrate that the in-court identification of the defendant was highly reliable. The complainant had ample opportunity to view the defendant at the time of the crime for several minutes in a well-lighted truck. The complainant's testimony concerning the occurrence reflects a high degree of attention during the incident. Complainant's prior description of his assailants was reasonably accurate. It must be noted that while defendant argues the description was not complete, "precise accuracy in description of the offender by an identifying witness is not a necessity." (*People v. Pickens* (1978), 63 Ill. App. 3d 857, 863, 380 N.E.2d 868.) The complainant manifested a high level of certainty when selecting defendant's picture from 200 photographs. Finally, the photographic confrontation occurred three days after the incident thus making it sufficiently close in time to bear positively on the issue of reliability. See *People v. McKinley* (1977), 69 Ill. 2d 145, 152, 370 N.E.2d 1040, citing *Manson*, 432 U.S. 98, 114, 53 L. Ed. 2d 140, 154, 97 S. Ct. 2243, 2253.

■ The testimony of one witness is sufficient to convict in instances where the witness is credible. (*People v. Yarbrough* (1977), 67 Ill. 2d 222, 226, 367 N.E.2d 666.) In the instant case not only was complainant's testimony credible and reliable, but it was corroborated by the evidence of the license number. We conclude that the guilt of defendant was proved beyond reasonable doubt.

For the above reasons the judgment appealed from is affirmed.

Judgment affirmed.

McGLOON and CAMPBELL, JJ., concur.