THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* REX ALLEN TAYLOR, Defendant-Appellant.

First District (1st Division)   No. 81—818

Opinion filed October 25, 1982.   -

Allan A. Ackerman and Curtis Beckman, both of Ackerman and Egan, Ltd., of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat and Gregory Ellis, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McGLOON delivered the opinion of the court:

Defendant Rex Allen Taylor was charged by indictment with murder, attempt murder, aggravated battery, and burglary. After a bench trial, defendant was found guilty of murder and attempt murder and sentenced to concurrent terms of imprisonment of 30 years. Defendant appeals.

On appeal, defendant contends (1) he did not receive effective assistance of counsel; (2) the admission of his cellmate's testimony violated his sixth amendment rights; (3) the prosecutor's closing argument was prejudicial; and (4) his sanity at the time of the offense was not proved beyond a reasonable doubt.

We affirm.

Initially defendant was found unfit to stand trial and was remanded to the custody of the Illinois Department of Mental Health. After a finding of fitness, trial commenced and defendant pleaded not guilty by reason of insanity. The facts giving rise to the charges upon which defendant was convicted are undisputed and a brief statement of the facts as proved during trial are as follows.

Defendant and Betsy Taylor were married in 1973. On June 30, 1977, Betsy filed a divorce petition in Milwaukee, Wisconsin. She was given temporary custody of their son Brian, but Betsy continued to reside with defendant.

On August 7, 1978, Betsy left Milwaukee with Brian and drove to her parent's home. Betsy's parents Louis and Betty Jennings resided in Schaumburg, Illinois. Defendant phoned the Jennings' residence several times that evening and spoke with Betsy's sister Jenny. Defendant threatened to kill Betsy and her family.

The following day, defendant went to the Jennings' home and tried to take Brian. When Betsy and Mrs. Jennings attempted to stop defendant, he began striking them. David Boston, an off-duty police officer, witnessed part of the incident and assisted in subduing defendant. Defendant was charged with battery and criminal trespass to property and was released on bail after that afternoon. That evening, defendant phoned the Jennings approximately 10 times.

On August 9, 1978, defendant called the Jennings. He spoke to Jenny and threatened to kill Betsy. He also spoke to Louis and Brian. At 1 p.m., defendant arrived at the Jennings' residence. He broke the glass patio doors with a car jack and entered the apartment. Defendant went directly to the master bedroom where Betsy was trying to call police. Defendant stabbed Betsy several times. When Mrs. Jennings grabbed defendant's arm, defendant turned and stabbed her in the chest. Defendant then knelt over Betsy and stabbed her several

more times. Thereafter, defendant locked himself in the bathroom and turned the knife on himself. When paramedics arrived, defendant was unconscious. Betsy Taylor died from the wounds inflicted by defendant.

Both the State and defendant called several witnesses to testify on the issue of defendant's sanity. Dr. James Cavanaugh, called as an expert by the defense, conducted three interviews with defendant. Based on his review of other psychiatric reports on defendant, defendant's records from Chester Mental Health Center, police reports, letters written by defendant, and his personal observations, Dr. Cavanaugh determined that defendant suffered from a psychotic depressive disorder. Significant to Dr. Cavanaugh's diagnosis were the reports from the mental health center which described defendant as disturbed and depressed. The reports further stated that defendant has hallucinations, suffered from schizophrenic reactions, and had received intensive care for several weeks. Dr. Cavanaugh further testified that defendant's suicide attempt was evidence of insanity and concluded that on the date of the crimes, defendant was incapable of conforming his conduct to the requirements of law or appreciating the criminality of his behavior.

Dr. Melvin Seglin, another defense expert, testified that defendant suffered from paranoid schizophrenia and on August 9, 1978, was unable to conform his conduct to the requirements of law. He based his diagnosis on interviews with defendant, police reports, defendant's prior attacks on his wife, defendant's auditory hallucinations and defendant's drinking problem.

Dr. Gursen Kaplan testified on behalf of the State. Prior to examining defendant, Kaplan reviewed police reports concerning the slaying of Betsy Taylor, defendant's medical records from Chester Mental Health Center, the pathological protocol on the death of Betsy, documents from the Psychiatric Institute of Cook County regarding examinations of defendant performed there, and letters written by defendant to Betty Jennings. After reviewing these materials, Dr. Kaplan expected defendant to exhibit indications of a long and severe mental illness, yet defendant expressed no depression, grief, or guilt. Doubting the prior opinions of the other experts that defendant was insane at the time of the offenses, Dr. Kaplan requested additional materials. He thereafter reviewed social service histories of defendant's family and police reports regarding prior domestic altercations between defendant and his wife. Dr. Kaplan interviewed defendant a second time. He determined that defendant was capable of controlling his impulses and was able to conform his conduct to the requirements of

law on the day of the crimes.

Dr. Kaplan further testified that defendant was a malingerer and cited several discrepancies between defendant's statements to him and defendant's statements as mentioned in various other reports. Dr. Kaplan believed defendant was deceitful and lied in a self-serving manner. Kaplan further testified that defendant's acts on the day of the crime were premeditated and that this planning indicated a lack of impulsive behavior.

Both the State and defendant called several lay witnesses to support their respective theories of defendant's sanity and insanity on the day of the crimes. However, no issue is raised which directly relates to their testimony and therefore, specific references will be referred to only where appropriate in the discussion of the issues.

The first issue raised on appeal is whether defendant received effective assistance of counsel. In support of his contention that trial counsel was incompetent, defendant cites counsel's failure to file motions to suppress oral statements given after his arrest and to suppress evidence of a shotgun found in the trunk of his car. Defendant further contends counsel's failure to call four additional lay witnesses in support of his insanity defense is evidence of incompetency.

■ We find defendant's charge of incompetency based on the failure to file motions to suppress to be without merit. Failure to file a motion to suppress does not prove ineffective assistance of counsel, as such decisions are matters of professional judgment. (*People v. Wing Cheung* (1980), 83 Ill. App. 3d 1048, 404 N.E.2d 558.) The exercise of professional judgment by an attorney is not within the scope of appellate review. *People v. Brittain* (1976), 35 Ill. App. 3d 1047, 342 N.E.2d 814.

We now turn to defendant's claim regarding counsel's incompetency based on the failure to call four lay witnesses. During the hearing on the motion for a new trial, defendant's new attorney retained after trial made an offer of proof regarding the testimony of these witnesses. Heidi Tyrell would have testified that Betsy Taylor spoke of seeking psychiatric help for defendant in 1978. James Thayer, one of defendant's cellmates, would have testified that defendant hallucinated his wife's presence in his cell and could not recall the slaying. Christine Smith, a friend of the Taylors, would have testified that defendant sought to solve his marital problems by seeking psychiatric help and never threatened to kill his wife. Tom Guhrke would have testified that defendant never threatened to kill Betsy even though he knew of her extramarital affair.

■ The record clearly indicates that defense counsel knew of the

existence of these witnesses and interviewed them. In view of the fact that counsel called two expert witnesses and three lay witnesses in defendant's case in chief and two witnesses during rebuttal, the failure to call the other four apparently was a conscious decision of trial strategy. The testimony of the witnesses called by the defense was sufficient to present the facts supporting defendant's insanity plea and the outcome of the trial probably would not have been different had the additional witnesses been called. Under the circumstances of this case, we find no evidence of incompetency. *People v. Greer* (1980), 79 Ill. 2d 103, 402 N.E.2d 203.

Second, defendant contends the testimony of Glenn Serratt, defendant's cellmate from June 1979 until early September 1979 was improperly admitted. Serratt testified to conversations he had with defendant during the time they were cellmates. He testified that defendant stated he had not been honest with his psychiatrists, that he pretended to be crazy when he spoke with doctors, and that a friend told him to feign a lack of memory as to the stabbings. Serratt further testified that defendant told him about the crimes and was able to recall the details of the incident.

Because Serratt notified the State's Attorney's office of his conversations with defendant, defendant describes Serratt as a "government informer." He maintains that the admission of Serratt's testimony violated his right to counsel and relies on *United States v. Henry* (1980), 447 U.S. 264, 65 L. Ed. 2d 115, 100 S. Ct. 2183, to support this contention.

In *Henry*, the Supreme Court held that the admission of a paid informant's testimony regarding conversations with Henry during Henry's incarceration violated the sixth amendment. However, in *Henry*, the conversations occurred after the informant had made arrangements with the government. In the case at bar, the testimony was limited to conversations which occurred while Serratt and defendant were cellmates and prior to the time Serratt contacted the State's Attorney. Unlike *Henry*, no deliberate governmental inducement or interference is present.

■ Furthermore, the court in *Henry* implicitly approved the admission of testimony of another of Henry's cellmates who had not made arrangements with the government to report conversations with Henry. (447 U.S. 264, 267 n.3, 268 n.5, 274 n.13, 65 L. Ed. 2d 115, 120 n.3, 121 n.5, 125 n.13, 100 S. Ct. 2183, 2185 n.3, 2186 n.5, 2189 n.13.) Similarly, the court in *United States v. Calder* (2d Cir. 1981), 641 F.2d 76, held that the testimony of neutral witnesses such as Serratt was admissible and that the admission of the testimony did not

violate the sixth amendment. We therefore conclude that the admission of Serratt's testimony was not improper.

■ Third, defendant complains of prejudicial comments made during the prosecutor's closing argument. However, defendant failed to preserve this issue for review. In his motion for a new trial, defendant only generally alleged that improper remarks denied him a fair trial. None of the allegedly prejudicial remarks was specified in the motion. At the hearing on the motion for a new trial, defense counsel did not specifically raise the issue. In deciding this identical issue based on substantially similar facts, the court in *People v. Turk* (1981), 101 Ill. App. 3d 522, 428 N.E.2d 510, held that the failure to adequately inform the trial court of erroneous and prejudicial remarks precludes consideration on appeal of issues regarding improper argument. Therefore, the issue is waived and we need not consider its merits.

Fourth, defendant advances several arguments regarding the trial court's finding that he was sane on the day the crimes occurred. Initially, he contends the trial court improperly rejected Dr. Cavanaugh's testimony that defendant's suicide attempt indicated insanity. Defendant argues that this evidence conclusively proved insanity at the time he slew his wife and injured his mother-in-law.

■ ■ Whether a defendant was sane at the time of a crime is a question of fact, and the finding on this issue will not be reversed unless it is so improbable or unsatisfactory as to raise a reasonable doubt as to defendant's sanity. (*People v. Carlson* (1980), 79 Ill. 2d 564, 404 N.E.2d 233.) In deciding the question of sanity, the trier of fact may accept one'e expert's opinion over another. *People v. Meeker* (1980), 86 Ill. App. 3d 162, 407 N.E.2d 1058.

■ In the case at bar, the trial court was not required to accept the testimony of Dr. Cavanaugh. The testimony of Dr. Kaplan contradicted that of Cavanaugh and supported the trial court's finding that defendant was sane. Indeed, Dr. Kaplan testified that defendant did not attempt suicide. Rather the act was merely a suicidal gesture. Even Dr. Cavanaugh recognized that suicidal behavior often occurs because of a consciousness of guilt. Furthermore, in answering hypothetical questions based on the facts of the case, Dr. Kaplan testified that defendant's behavior was premeditated and intentional, not uncontrolled and impulsive as defense experts asserted. Other evidence supported Dr. Kaplan's opinion that the crimes were planned. Jenny Jennings testified that defendant threatened to kill Betsy and her family several times. The evidence also showed that defendant rented a car and parked 1½ blocks from the Jennings' residence to avoid de-

tection. Defendant brought weapons with him. These facts indicate the existence of a plan or design for the perpetration of the offenses which tends to prove sanity. (*People v. Meeker* (1980), 86 Ill. App. 3d 162, 407 N.E.2d 1058; *People v. Spears* (1978), 63 Ill. App. 3d 510, 380 N.E.2d 423.) In conclusion, we find that the trial court was not obligated to accept Dr. Cavanaugh's testimony. His opinion was rebutted by Dr. Kaplan whose opinion was based on facts in the record. We therefore will not disturb the trial court's finding on this issue.

■ Defendant also contends the trial court failed to consider the post-arrest behavior in determining his sanity at the time of the offenses. We agree with the general proposition cited by defendant that post-arrest symptoms of mental illness are relevant in evaluating defendant's mental condition at the time of the offense. (*People v. Muskgrove* (1976), 44 Ill. App. 3d 381, 358 N.E.2d 336.) However, the record clearly reveals that the trial court was aware of and considered defendant's post-arrest history in deciding the issue of insanity. Therefore, defendant's contention is without merit.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

CAMPBELL, P.J., and O'CONNOR, J., concur.