THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RICHARD TYLKOWSKI, Defendant-Appellant.

First District (3rd Division)   No. 85—1995

Opinion filed May 25, 1988.

94

James J. Doherty, Public Defender, of Chicago (Frances Sowa, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., Joan E. Disis, and Cary Davis, Assistant State's Attorneys, of counsel), for the People.

JUSTICE FREEMAN delivered the opinion of the court:

The defendant, Richard Tylkowski, was arrested and charged with murder in connection with the strangling death of Mary Hickey. Defendant pleaded not guilty by reason of insanity. Following a bench trial, the court entered a finding of guilty but mentally ill, and defendant was sentenced to 30 years in prison. In his appeal, defendant argues that the trial court erred in denying his motion to suppress a statement made following his arrest. Defendant also argues that the State failed to establish beyond a reasonable doubt that he was sane at the time of the offense and that the trial court relied on an erroneous standard in rejecting his insanity defense.

On November 24, 1982, the body of Mary Hickey was found in the backyard of a house located at 6452 South Keating in Chicago. The deceased, who had been an inpatient at the Madden Mental Health Center for the past four months, lived in the house with her parents, her younger brother, and her sister, Margaret. Margaret Hickey had dated defendant in high school, and nine days before the murder defendant and Margaret's present boyfriend had an altercation when defendant asked Margaret for a date and she refused. Two days after the murder a note signed by defendant and addressed to Margaret Hickey was found in the family's mailbox. The note stated that something terrible might happen if Margaret did not call defendant. That afternoon when Margaret saw defendant standing outside the house, she telephoned the police. Margaret described defendant and his car to police officers Langan and Acevez, and the two officers drove around the area to see if they could find defendant. After seeing an empty car matching the description given by Margaret parked outside a bar, the officers returned to the Hickey's house and asked Andrew Hickey, Margaret's father, to come with them to identify defendant. Langan testified that it was his intention to ask defendant if he would voluntarily accompany him to the police station to answer questions with regard to the homicide investigation.

About three blocks from the Hickey's house, Andrew Hickey got out of his car and pointed to a blue car that was stopped in traffic. The police officers left their car and approached defendant's car. Officer Langan testified that as they approached the car he noticed that it had no license plates. Langan stated further that he asked defendant to get out of the car, and as defendant stepped out Langan saw that he had a knife in his boot. Langan also testified that defendant failed to produce a driver's license. Defendant was arrested, advised of his rights, and taken to the police station where he later confessed to killing Mary Hickey. Langan testified that at the time of the arrest,

defendant was neatly dressed, spoke in an intelligent manner, and gave no indication that he did not understand the *Miranda* warnings. John Feely, the assistant State's Attorney who took defendant's statement, also testified that defendant appeared mentally alert and very intelligent.

Defendant's statement described the murder and detailed how, afterward, defendant dragged the body out through a side door, returned to the house where he looked for his keys and gloves, and then relocked the side door before leaving through the front door. Defendant then returned to his home, where he took a bath and burned his bloody clothes. Defendant also stated that the reason he had come to the police station was to talk about the Mafia.

In March 1983, Albert Stipes and Gilbert Bogen, psychiatrists on staff at the Psychiatric Institute of the Circuit Court of Cook County, examined defendant and determined that he was not mentally fit to stand trial. Defendant was transferred to the Manteno Mental Health Center for treatment, and in April 1984 defendant was declared fit to stand trial.

At defendant's trial his mother testified that in 1978 and again in 1980 defendant was committed to Christ Hospital in Oak Lawn, Illinois, for psychiatric treatment. She also testified that defendant came to her house on the day of the murder and that he appeared unkempt and behaved in a hostile manner. She stated that this was the type of behavior that had caused her to commit him in 1978 and 1980.

Rose Ryan, defendant's grandmother, testified that she was present when defendant saw his mother on the day of the murder. She testified that defendant's behavior frightened her and that he acted like a lunatic or a crazy man.

Roy Tylkowski, defendant's brother, testified that defendant had been behaving strangely during the fall of 1982. Eileen Englund, Roy's mother-in-law, also testified that defendant behaved strangely during that time. She further testified that defendant came to her home on the day following the murder and that he appeared unkempt, distraught, and wild-eyed.

The defense also produced four expert witnesses who testified concerning defendant's mental state. They were Drs. David Clark and Sorest Wasyliw, psychologists on staff at Rush Presbyterian-St. Luke's Hospital, and Drs. James Cavanaugh and Richard Baer, psychiatrists at the same hospital. The four examined defendant between July 1984 and January 1985, and all testified that defendant was suffering from a schizophrenic disorder at the time of the offense. Dr. Cavanaugh testified that defendant clearly had some cognitive or in-

tellectual awareness of what he was doing, as evidenced by his actions in moving the body, relocking the door, and disposing of his clothing after the murder. However, he further testified that defendant did not possess the emotional awareness that would have allowed him to discontinue or not engage in the actions that resulted in the murder. Dr. Baer also testified that defendant had a cognitive or intellectual awareness that he was hurting the deceased, but he did not have the emotional experience that his actions were wrongful or "stoppable."

In rebuttal, Margaret Hickey testified that she saw defendant nine days before the murder and again the day before the murder and that on both occasions there was nothing out of the ordinary about his appearance. She stated that although he seemed angry at the first meeting when she refused to go out with him, he talked logically and coherently on both occasions. Andrew Hickey, Margaret's father, testified that he saw defendant a week before the murder and that there was nothing unusual about defendant's appearance.

In addition, Gilbert Bogen testified for the State in rebuttal. He contended that defendant suffered from a bipolar disorder, not schizophrenia, and that defendant was able to understand that his actions were contrary to the law. Dr. Bogen also testified that, in his opinion, he was mistaken in his original assessment that defendant was unfit to stand trial. He stated that he now believed that at the time of the original examination defendant was malingering, *i.e.,* pretending to have a mental disorder. Bogen based his opinion on a number of factors, including evidence that while being treated at Manteno, defendant stated that he would be asserting an insanity defense at trial, and knew he had to prove that he was unable to control his actions; and evidence that while being examined by the defense psychiatrists in 1984 defendant claimed to have experienced auditory hallucinations (voices telling him to do things), a symptom he had not complained of in his earlier hospitalizations.

Prior to entering its judgment, the trial court stated that a finding that defendant was not guilty by reason of insanity had to be based on a determination that defendant either lacked substantial capacity to appreciate the criminality of his conduct or lacked substantial capacity to conform his conduct to the requirements of law. The court then recalled Dr. Cavanaugh's testimony that intellectually defendant could appreciate the criminality of his conduct, but was unable to do so emotionally. The court rejected this distinction, stating that it was not the intent of the legislature to excuse a defendant's action merely because he acted with emotional detachment. The court concluded that defendant was schizophrenic at the time of the offense,

but that he could appreciate the criminality of his actions, and that he did have the capacity to conform his conduct to the requirements of law. Therefore, the court entered a finding of guilty but mentally ill.

Defendant's first argument on appeal is that the police lacked probable cause to arrest him and, therefore, his confession should have been suppressed because it stemmed from his illegal arrest. We do not agree.

■ It is well settled that a police officer may stop and temporarily detain an individual for the purpose of a limited investigation absent probable cause to arrest him if the officer is able to point to specific and articulable facts which, taken together with reasonable inferences drawn from the officer's experience, would reasonably warrant the investigative intrusion. (*People v. Watson* (1986), 145 Ill. App. 3d 492, 495 N.E.2d 1153; *People v. Moffitt* (1985), 138 Ill. App. 3d 106, 485 N.E.2d 513; *People v. Martinez* (1984), 129 Ill. App. 3d 145, 472 N.E.2d 464.) Because there are no conclusive rules for determining whether an investigatory stop is justified, each case must be adjudicated on its particular facts. (*People v. Moffitt*, 138 Ill. App. 3d 106, 485 N.E.2d 513.) In addition, a trial court's determination on a motion to suppress a statement will not be overturned unless it is manifestly erroneous. *People v. Winters* (1983), 97 Ill. 2d 151, 454 N.E.2d 299; *People v. Watson*, 145 Ill. App. 3d 492, 495 N.E.2d 1153.

■ In the present case, the trial court held that, under all the attendant circumstances, there was probable cause to arrest defendant. We do not believe that this determination was manifestly erroneous.

The record shows that two days after Mary Hickey's murder, a note signed by defendant was found in the Hickey's mailbox, and, later that day, defendant was observed standing outside the Hickey's home. The police were informed of these facts, and while searching for defendant to question him, they observed his car and noticed that it had no license plates, possibly in violation of Illinois law. (Ill. Rev. Stat. 1981, ch. 95½, par. 3—701(1).) This fact clearly provided the officers with justification for stopping defendant. See *People v. Bradi* (1982), 107 Ill. App. 3d 594, 437 N.E.2d 1285; *People v. Ramsey* (1979), 77 Ill. App. 3d 294, 395 N.E.2d 973.

After the initial stop, defendant failed to produce a license, in violation of Illinois law (Ill. Rev. Stat. 1981, ch. 95½, par. 6—112), and the officers discovered that he had a knife in his possession. Under these circumstances, the officers clearly had probable cause to arrest defendant. See *People v. Ramsey*, 77 Ill. App. 3d 294, 395 N.E.2d 973.

Defendant contends that it appears from his confession that, while

he did not have license plates, he had a receipt showing that he had applied for the plates displayed on his windshield. He argues that, therefore, the police were not justified in stopping him. However, the only way the officers could determine that defendant did have a valid receipt on his windshield was by stopping him to check. The fact that there was no evidence that the officers ever determined whether the defendant had applied for plates does not invalidate defendant's arrest in light of the fact that upon stopping defendant, the officers discovered that he was carrying a weapon and driving without a license. Accordingly, we conclude that the officers' investigatory stop was warranted and that defendant's subsequent arrest was not illegal.

■ Defendant next argues that his conviction should be reversed because the State failed to offer credible testimony that defendant was sane beyond a reasonable doubt. Under Illinois law, all persons are presumed sane. (*People v. Silagy* (1984), 101 Ill. 2d 147, 461 N.E.2d 415.) To raise the affirmative defense of insanity, a defendant must present some evidence thereon. If a defendant introduces evidence sufficient to raise the defense, the State must sustain the burden of proving the defendant guilty by establishing beyond a reasonable doubt that the defendant was sane at the time of the offense. *People v. Silagy*, 101 Ill. 2d 147, 461 N.E.2d 415; *People v. Palmer* (1985), 139 Ill. App. 3d 966, 487 N.E.2d 1154.

According to defendant, the testimony of Dr. Bogen, the State's psychiatrist, was so weak and self-contradictory that it failed to rebut the presumption of insanity created by the testimony of the defense witnesses. Whether the State has met its burden of proof is a question of fact, and the trier of fact's determination will not be reversed unless it is so improbable or unsatisfactory as to create a reasonable doubt as to the defendant's sanity. (*People v. Silagy*, 101 Ill. 2d 147, 461 N.E.2d 415; *People v. Skorka* (1986), 147 Ill. App. 3d 976, 498 N.E.2d 607; *People v. Taylor* (1982), 110 Ill. App. 3d 112, 441 N.E.2d 1231.) In determining the question of sanity, the trier of fact may accept one expert's testimony over that of another. (*People v. Palmer*, 139 Ill. App. 3d 966, 487 N.E.2d 1154; *People v. Taylor*, 110 Ill. App. 3d 112, 441 N.E.2d 1231; *People v. Clark* (1981), 102 Ill. App. 3d 414, 429 N.E.2d 1255; *People v. Muskgrove* (1976), 44 Ill. App. 3d 381, 358 N.E.2d 336.) In addition, lay witnesses may express their opinions as to sanity if the opinions are based on personal observation of the accused, including conversations with him. *People v. Skorka*, 147 Ill. App. 3d 976, 498 N.E.2d 607; *People v. Palmer*, 139 Ill. App. 3d 966, 487 N.E.2d 1154; *People v. Clark*, 102 Ill. App. 3d 414, 429 N.E.2d 1255.

■ The weaknesses and contradictions cited by defendant include Dr. Bogen's testimony that he accepted without verification defendant's statement that he was employed, was studying computer programming, and had his doctor's permission to discontinue medication and therapy; his testimony that defendant had a history of struggling to control his impulses and may have been psychotic at times; and his testimony that he rejected references to hallucinations in defendant's Christ Hospital records. These claimed weaknesses and contradictions merely affect the weight to be given the witness' testimony. They do not require a finding that defendant was not sane at the time of the offense. In addition, we note that Dr. Bogen testified that the false statements about defendant's education, employment, and medication were not important to his final opinion and he explained that his reason for disregarding the references to hallucinations in the Christ Hospital records was that the records did not indicate that defendant ever actually complained of auditory hallucinations. Further, the fact that Dr. Bogen believed that at some time in the past defendant may have been psychotic or unable to control his impulses was irrelevant. It is the defendant's mental state at the time of the offense that is an issue. *People v. Littlejohn* (1986), 144 Ill. App. 3d 813, 494 N.E.2d 677.

In the instant case, Drs. Cavanaugh and Baer testified that defendant suffered from schizophrenia at the time of the murder. Dr. Bogen disagreed, testifying that in his opinion defendant was sane at the time of the offense. In addition, there was testimony from a number of lay witnesses. Andrew and Margaret Hickey testified that there was nothing unusual about defendant's appearance in the days before the murder. This directly contradicted the testimony of defendant's witnesses that defendant was unkempt and distraught during that time. There was also testimony from the arresting officers and the assistant State's Attorney who questioned defendant that he was neatly dressed and that he seemed aware and mentally alert. However, defendant's expert witnesses testified that it was not significant that defendant appeared coherent during his confession, given the structured nature of the questioning.

■ The trial court was free to accept or reject the testimony of these witnesses, and we cannot say that its decision was improbable or unreasonable. In addition, defendant's confession details how, after the murder, defendant removed the body from the house through a side door, relocked that door, made sure that he had left nothing in the house, and then destroyed his bloody clothes. This conduct reveals an awareness on his part of the criminality of his actions. See *People*

*v. Deizman* (1976), 44 Ill. App. 3d 829, 358 N.E.2d 1208.

As additional support for his argument that the State failed to prove his sanity beyond a reasonable doubt, defendant has cited this court's decision in *People v. Garcia* (1987), 156 Ill. App. 3d 417, 509, N.E.2d 600. However, we find that *Garcia* is inapplicable. There, the defendant was found guilty but mentally ill in connection with the attempted murder of his brother. The defendant argued on appeal that the State failed to prove he was sane at the time of the offense. We agreed and reversed. At the defendant's trial two psychiatrists diagnosed him as delusional and as a paranoid schizophrenic. The psychiatrists testified that the defendant suffered from hallucinations, delusions, and a persecution complex. They also stated that due to volitional problems, he was unable to ignore voices telling him to harm his brother. The State failed to produce any evidence to rebut this testimony and, in fact, the testimony of the State's witnesses tended to support the psychiatrists' conclusions. On appeal we found that there was substantial unrefuted evidence that, at the time of the offense, the defendant's mental processes were so gravely impaired that he lacked the ability to conform his conduct to the requirements of the law. Therefore, we remanded for entry of a finding of not guilty by reason of mental illness.

Unlike *Garcia*, where there was nothing to refute the defendant's evidence of insanity, here, the State produced evidence to rebut the testimony of both the expert and lay witnesses called by defendant. As we pointed out above, the trier of fact is charged with determining whether the State has met its burden of rebutting the evidence of insanity and we cannot say that the determination made by the trial court in the present case was erroneous.

Defendant also argues that Dr. Bogen's testimony on the question of the defendant's mental state did not comport with Illinois definition of insanity for legal purposes and that the trial court erroneously accepted this misinterpretation of the law in reaching its decision.

Section 6—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, par. 6—2) provides that a person is not criminally responsible for his conduct if at the time of the conduct, as a result of mental disease or defect, he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law. Dr. Bogen testified that appreciation refers to knowing and understanding and stated that he did not make a distinction between emotional and intellectual understanding. He concluded that defendant was able to understand the criminality of his acts. In reaching its

decision, the trial court rejected Dr. Cavanaugh's distinction between emotional and intellectual appreciation and found that defendant could appreciate the criminality of his actions. The court also found that defendant did have the ability to conform his conduct to the requirements of law.

Defendant contends that Dr. Bogen testified only that defendant understood his acts were contrary to law and that this testimony did not specifically address the issue of his ability to appreciate the wrongfulness of his conduct. This argument is without merit. Initially, we note that an expert's testimony that a defendant understood the rightness or wrongness of his acts or understood that his actions were contrary to law has been held sufficient to establish that he was sane. (See *People v. Skorka,* 147 Ill. App. 3d 976, 498 N.E.2d 607; *People v. Spears* (1978), 63 Ill. App. 3d 510, 380 N.E.2d 423; *People v. Muskgrove,* 44 Ill. App. 3d 381, 358 N.E.2d 336.) Further, Dr. Bogen testified that in his opinion appreciation meant knowing and understanding, and therefore his testimony that defendant "understood" that his acts were criminal was sufficient under the statute.

Defendant further argues that appreciation is not synonymous with the cognitive ability to know that one's conduct is contrary to the law. Defendant claims that the committee comments to section 6—2 (Ill. Ann. Stat., ch. 38, par. 6—2, Committee Comments, at 326-28 (Smith-Hurd 1972)) demonstrate that the term was chosen to denote the inability to appreciate the wrongfulness of one's conduct emotionally, as opposed to mere intellectual appreciation.

Defendant's reliance on the committee comments is misplaced. In discussing the *McNaughten* rule for establishing insanity, the comments set forth a number of complaints that had been directed at the rule. One of the complaints was that the rule required that a defendant "know" that his actions were wrong. It was pointed out that in certain cases "the defendant may have a kind of verbal knowledge of right and wrong. What he lacks is understanding of the sort that involves the emotional or affective parts of his personality \*\*\*. \*\*\* [T]his separation between the intellectual and affective aspects of his personality may be the primary symptom of the person suffering some types of serious mental affliction." (Ill. Ann. Stat., ch. 38, par. 6—7, Committee Comments at 327 (Smith-Hurd 1972).) The comments go on to state that the criticisms directed against the rule varied in their persuasiveness.

The comments further state that the term "appreciation" is employed instead of "know" in section 6—2 in an effort to "find a term more congenial to modern psychiatric notions of understanding." (Ill.

Ann. Stat., ch. 38, par. 6—2, Committee Comments, at 329 (Smith-Hurd 1972).) While this indicates acceptance by the legislators that something more than mere knowledge is required, it does not indicate that they intended to adopt the emotional/intellectual distinction discussed in the criticism of the *McNaughten* rule and we can find no authority which suggests that it is error for a trier of fact to reject this distinction.

■ In addition to *Garcia,* defendant has cited, as additional authorities, a number of articles and commentaries which discuss the shortcomings of the *McNaughten* rule and which set forth reasons for distinguishing between an individual's ability to know that his actions are criminal and his ability to appreciate his actions. These authorities suggest that testimony concerning a defendant's emotional capacity is relevant in determining sanity. While we acknowledge that such testimony may be relevant, we again point out that there is no authority which indicates that the Illinois legislature intended to adopt a requirement that a defendant appreciate both emotionally and intellectually that his actions are criminal, or that it is error for a trial court to reject testimony as to a defendant's emotional appreciation.

■ In conclusion, we believe that the trial court did not err in its interpretation of section 6—2. The statute requires only that the trier of fact find that the defendant lacked substantial capacity either to appreciate the criminality of his conduct or to conform his conduct. The trial court found that, although defendant was mentally ill, he had the capacity to appreciate that his conduct was contrary to the law and that he also had the capacity to conform his conduct to the requirements of the law. We find that there was sufficient evidence to support the trial court's determination and that its conclusion was in compliance with the standard set forth in the statute.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

WHITE, P.J., and RIZZI, J., concur.